The next case is agenda number 7, case number 113181, People v. Geiger. Counsel for the appellant. Good morning, Your Honors. My name is Fletcher Hamill, and I represent the defendant at Blount, Terrell Geiger. May it please the Court, Counsel. Your Honors, at issue in this case is whether the defendant's 20-year sentence Can you lift that microphone up? I'm sorry. Sure. Thank you. At issue in this case is whether the defendant's 20-year sentence for contempt of court is excessive. And to reach that issue, I also ask that this Court consider the degree of deference that it should give a trial court's determination of sentence in a contempt case and whether that should be the same or slightly less than what it gives the trial court's decisions in a case involving another offense. Taking the second question first, this Court has always evaluated sentences under the abusive discretion standard. And that has proven to be an extremely deferential standard. In essence, any sentence within statutory limits should be upheld unless it is manifestly disproportionate to the offense. And in practice, that has amounted to extremely deferential review. However, contempt is a unique offense. There are three characteristics of contempt that go directly to the sentencing issue that do not exist in any other offense. And the first of that, those is the fact that contempt does not have a statutory sentencing range. Contempt is limited only by the inherent powers of the judge. And so what this does is when there is a statutory sentencing range, it does two things for the reviewing court. First, it sets limits. Any sentence above the sentencing range, for example, if somebody in a first-degree murder receives 101 years, is automatically void. And once that sentence is automatically void, the defendant never has to convince the reviewing court that his sentence was excessive or was unjust or unfair. All he has to do is say this is outside of the range, it's void, and the sentence is reduced. Secondly, having the statutory sentencing range assures the reviewing court that not only has the trial judge deemed the sentence to be an appropriate sentence, it also assures the trial judge or the reviewing court that the legislature, acting on the will of the people of the state, has also deemed that sentence to be appropriate, every sentence within the range. So if the same, if a different defendant received 100 years, an extended term for first-degree murder, then even though that's an extreme sentence, this court knows that not only did the trial judge think that was appropriate, but also the legislature thought that there were first-degree murder cases where that would be an appropriate sentence. And that deference to the legislature has played an important role in this court's previous decisions, delineating the abuse of discretion review. In particular, we refer you to People v. Fern, where this court held that it should never, or that a reviewing court should not compare sentences between one case, a sentence to another case with a similar offense. The main reason this court came to that conclusion in Fern was out of deference to the legislature, because if you, what this court held in Fern was that if you were to set limits on sentences based on what other defendants had received for the same crime in other cases, you would essentially create a lesser sentencing range than what the legislature imposed. Do you really care, Mr. Hamel, if this court keeps the abuse of discretion standard in place? Let me just go a little bit further. I mean, the federal court still has an abuse of discretion standard. They talk about with a sense of responsibility and circumspection. Couldn't this court still keep the abuse of discretion rather than coming up with a new standard and realize since there isn't a sentencing range in this case that they take a little bit different approach than they do in cases that have mandatory sentencing ranges? That is actually exactly what I'm advocating. I'm just using different words to express it. That's pretty exact. You like my argument better, though, don't you? Perhaps, yes. Yes, that's exactly it. They still call it, the federal court still calls it abuse of discretion. But what they do is they recognize the fact that there's no statutory range here, and they recognize the fact that, you know, the second character is there being no real definition of the conduct. You know, any kind of behavior could be contempt, anything from not standing up in court all the way up to attacking witnesses. And they recognize the fact that the judge is the victim. And taking those three, you know, those three things, what they've done is they approach it a little bit differently. And really what they're doing as a practical matter is they take the conduct, they compare it to some statutorily defined offense, and they compare the sentence to the sentencing range for that offense. And it's not a bright line, you know, must be within that range rule, but when the sentence greatly exceeds what the, you know, what the sentence would, or the range would have been had it been charged as a different offense, then they don't, they do not hesitate to reduce the sentence. And in the end, you know, it's still called abuse of discretion review. In practice, it really does not look like an abuse of discretion review in the same way that this court does so, does it in a different case. But, yeah, essentially I'm asking for this court to simply approach it a little bit differently in recognizing the reality of the offense. Mr. Hamill, with regard to that, past criminal record, can that be considered? And if so, why? I believe it sure can, because just because the criminal record of any defendant in any case should be, you know, is relevant to their sentence. So a person with, you know, a lot of prior convictions would probably, could get a little bit more for a contempt than somebody who doesn't. But on that basis, though, I mean, it depends on what the conduct was of the witness to receive a contempt, you know, citation. What, you know, so if it's just standing up in court and giving, you know, a bad look to the judge and a huge criminal record, so what would that do to the formulation of the sentence versus something that was more egregious and no background? Well, you know, ultimately, as long as you're acting, as long as the judge is somewhere within the realm of reality, I guess, what would be the sentence range? Yeah, depending on the judge, you know. There's still going to be a lot of discretion.  So say somebody's refused to stand up in court and has, you know, a murder in his background versus he could end up with something, a little more significant than what you might expect for not standing up in court. I don't think you get 20 years out of it or even, you know, one year out of it. But, you know, you would think a normal citizen not standing up in court with no criminal record would probably not do any jail time at all. Maybe somebody who had a murder in his background might do a little bit. On the other hand, you know, the witness, you know, the defendant who attacks the witness, and there's a couple of federal cases involving that, can, you know, might get up to 10 years. In one of the federal cases, there was a 10-year sentence approved. So, you know, you're looking at both. You look at the conduct and you look at the record. In this case, what you have is the defendant has three prior nonviolent drug convictions, and those are relevant. And so perhaps he could get a little bit more time for not testifying than somebody who doesn't have three prior drug convictions. So what sentence do you think would be fair? Well, in this case, I have the luxury that my client has already served an eight-year sentence, essentially. So I think eight years is probably something less than eight years, really. And I don't say that only because my client has served that, but when he took the stand in this case, if he didn't want to testify, he had a choice. He could have perjured himself or he could have refused to testify. He made the choice if he had perjured himself. And if the state had charged him with perjury, he would be looking at a two- to 10-year sentence with the extended term, which he would have been eligible for because of his priors. May I ask a specific question about the sentence here? Am I right? Your client was serving a sentence, correct? I'm sorry? Your client was already in custody. Is that right? Yes, that's correct. And what was his sentence in that case? I believe it was six years for delivery of a controlled substance. And then this 20 years, is that consecutive to that? It is. It is consecutive to that. Okay. When you tell us he's been in eight years, how do you do the math? Okay, I've taken the time he's in minus three years for the six-year sentence. So I'm assuming he served the first three years he served on that sentence, and then he's done four years since that, I believe. So you think it's four years into the 20-year sentence? Right, right. That's my understanding based on the Department of Corrections printout. So he's already done eight times or, I'm sorry, 16 times the longest sentence that you can find in a published Illinois case for somebody refusing to testify. I'm a little confused. Are you still asking for something less than eight or are you asking for something less than four? For something less than eight. Right. Because with day for day, it would be. There's just no point in assigning him to something less than he's already done. But we will admit there is some aggravation in here, and the judge did point out that, you know, the three prior drug convictions, and the judge apparently did not like the way the defendant looked at him and felt that he was being blatantly disrespectful when he pled the Fifth Amendment. Frankly, it doesn't show up in the transcript, but I guess we can defer to the judge's interpretation of his facial expression. But can those two factors really add up to a 20-year sentence? And I think under any standard review, it really just can't. It's just too much time. Is one of the factors that a court would take into consideration, in this case it was People v. Hollins was the underlying case? That's correct. Hollins was convicted? He was. Your position is that your client's testimony was cumulative? It was. All right. Is that a factor we're to consider in whether there was an abuse of discretion as to the lack of testimony ultimately led to the conviction of the defendant? I think it is, because I think you do consider the ultimate harm that was caused by the defendant, in the same way that a murder case is punished more greatly than an attempt murder case. And in this case, not only was Hollins convicted in this trial without Geiger's testimony, but Hollins had had a previous trial where Geiger was never even called as a witness, and Hollins was convicted at that trial. And that conviction was reversed, but the reversal had nothing to do with the way of the evidence against Hollins. It had to do with a jury selection issue. So he was such a nonessential witness that he was not even called by the state the first time around. And I think that's a factor. A factor in mitigation, or even more importantly, is not a factor in aggravation. It is not a factor that would justify going all the way up to 20 years, or really anywhere beyond what other witnesses have received for refusing to testify in these cases. And it's also worth considering that the defendant in this case, the record would show that he sincerely believed that he had a Fifth Amendment right not to testify in this case. He maintained that all the way through the pre-sentence investigation, and told the probation officer the only reason he had testified in one of Hollins' co-defendant's cases five years before this, or more, was that he was young and didn't understand his rights. So he was maintaining all the way through the sentencing hearing that he had a right not to testify. Now, he was wrong, and also should we point out that he had an attorney appointed to him, actually pretty late in proceedings, but did have an attorney appointed to him who also maintained that he had a Fifth Amendment right to not testify. So his belief appears to have been sincere. And also, the defendant in this case really was not given much fair warning that he was risking 20 years when he refused to testify. The initial admonishment by the judge was when he was actually on the stand and was given the opportunity to testify, the initial admonishment of the judge was up to six months or a period of years. When he refused, the state's initial request for a sentence was six months with no day for day. And then the reason the state ended up filing a petition was that the judge told them, I can't take away the day for day, but if you file a petition, we can give him more than six months. And so it was only after the state filed its petition later in the day that this 20 years came in to play. And while the state's correct that it's possibly, Holland's trial was not over at the time that the defendant was finally advised that the state was asking for 20 years. By the time he was, it was well after they had given him the option to testify, he would have had to have basically interrupted the proceeding. And after the judge read the petition, he went almost directly to continuing the case for the defendant to consult with his attorney to see how he's going to defend the petition. So by the time he was, and even if he had that opportunity then to, you know, pipe up and say, okay, you know what, you're right, I'll testify. Nobody really thinks they're going to get 20 years for not testifying in court. And it's this contrast to. Can we write in, though, admonishment to criminal contempt proceedings? I mean, there are instances of criminal contempt where there's no even opportunity to admonish, right? If something occurs in the courtroom, you can't come in and say, hey, the judge abused his discretion on how long he gave for criminal contempt because he didn't admonish him. In this case, I guess because it was a failure to testify, there was a chance to say, if you don't testify, here's what's going to happen. But do we write that in? Is that something we should consider? I don't think so. I think that if what I was really getting at in that argument is that in Carradine, this court confronted a situation where a witness was told specifically, you're going to get six months if you don't testify in this case. And this court made the finding that that witness made the conscious decision, I'll take the six months over not testifying. And this court found that to be a good one of the justifications for upholding that sentence against an excessiveness argument. And my point is that that factor is not here. And really, all of my points kind of go to that. It's that it's 20 years. It's so much longer than anyone would expect to see in a case like this. Surely, if you're going to have a sentence this long, there has to be something to justify it. And all these things just are absent. And even, you know, when you're talking about Carradine, whenever you make these comparisons between these cases and you look at Carradine and Cooper, whatever this court said about a six-month sentence in Carradine and Cooper is just hardly applicable when the sentence is 20 years. It's just a completely different case. And it's ultimately the sentence I believe is outrageous. And so, you know, all in all, what happened here is the judge gave the defendant a 20-year sentence because he had three nonviolent drug offenses and the judge didn't like the way he looked at him. Well, counsel, excuse me. The quote that I saw said, I saw pure scorn for the judicial system in the defendant's face. Was there anything to indicate that it was more of a personal? You said the way he looked at him. I don't read that quote. Now, that's an isolated quote I give you. But to me, that's not the same as I don't like the way you looked at me, Mr. Hamill. Fair enough. Well, I guess he didn't like the way he looked at the time, whether he was projecting that on the judge or on the court system in general. Whatever it was, it was the judge didn't like something about his demeanor. He didn't like his demeanor, and he had three nonviolent drug offenses, and now he had 20 years. And that, under any standard of review, that's simply excessive. And I would ask your honors to reduce the sentence to eight years or less, unless you have any further questions. Thank you for your time. Thank you, Mr. Hamill. Counsel for the appellee. Good morning, your honors, counsel, and may it please the court. I'm Assistant Attorney General Carl Treble, representing the people of Illinois. The parties agree that the defendant committed a serious offense. And, yes, the parties also agree that the sentence imposed was serious, indeed harsh. However, defendants failed to acknowledge the analysis necessary here regarding his recidivism. The defendant had been convicted of four prior felonies and a prior misdemeanor, and that weighed heavily in his sentencing. The General Assembly approves, generally speaking, of doubling sentences in their enhanced sentencing structure whenever someone has committed prior felonies. Here, one of the defendant's prior felonies was a Class X felony, the six-year sentence that he was serving at the time he committed this offense. So, in other words, instead of looking at whether or not a 20-year sentence is appropriate, this court could instead set aside the recidivism and set aside basically half of the sentence and analyze whether or not a 10-year sentence would be appropriate under these circumstances. And under these circumstances, where the nature of the offense was so serious, a 10-year sentence was not excessive. Now, regarding the nature of the offense, it's important to point out that the offense here was not an alternative to perjury. The offense here was not indeed even obstruction of justice. The offense was an eyewitness refusing to provide eyewitness testimony regarding the behavior of a double murderer or someone who had been accused of a double murder, and that could have impacted either the defense or the prosecution. In other words, eyewitnesses who withhold testimony in murder cases put a defendant's life at risk of a false prosecution or put the public at risk of a false acquittal. That is a very serious offense. Wasn't there concern in this case about gang retaliation if the defendant testified? There's nothing on the record to support that contention, no, Your Honor. In fact, the trial court made a factual finding that there was no fear involved. How did the trial court come to that conclusion? Did it introduce any evidence that allowed the trial court to make that conclusion? The trial court said that it did not observe any fear in the contempt of and the demeanor and contempt of the defendant. And, of course, this court has held on many occasions that it must defer to the trial courts for those kind of findings because the trial court is in the best position to judge the demeanor of the witnesses. So that factual finding combined with the factual finding that here defendant did not have Fifth Amendment right supports the trial court's imposition of a serious sentence. When did the trial judge hand out the 20 years? What stage of proceedings? Well, the trial judge imposed the 20-year sentence after the sentencing hearing had concluded. But that wasn't the first time defendant had been warned that he faced. No, that's not my point. I asked a question of Mr. Hamill as to whether this court can consider the fact that in the underlying case there was a conviction. And maybe you take exception with him saying, yes, you can consider that because you said in this particular case the lack of testimony from the defendant here could have affected the underlying prosecution in one of two ways. He sentenced him after the, I would assume, after the conviction of the underlying case, right? Yes, Your Honor. The Hollins trial concluded the next business day, the Monday, after these proceedings which occurred on a Friday. So is it your position then that we are not to consider whether or not there was any impact on the underlying prosecution? Yes, Your Honor. I think at most it would be a very small factor in the analysis. This court had considered a case last term where a boy had brought a gun into a school and fired it multiple times in a crowded hallway and thank goodness no one was actually hurt. But a 25-year sentence was still imposed. And this court explained that the harm here was not the fact that he had fired the gun, the harm was not, or the analysis was not whether or not somebody had been injured. The harm was the risk that he imposed on those kids. In the same way, there's a grave risk imposed on the justice system itself when an eyewitness refuses testimony in a double homicide case. Again, the witness here heard his gang member, his fellow gang members, discussing the fact that they were going to go out and commit a murder and was there at the hotel when they came back and said, yeah, we did the murder, and then helped them at least get started with disposing of the weapons that were used in that case. His refusal to provide that testimony in this case is troubling and calls for a serious sentence. What kind of a serious sentence? In other words, is there any limit on what could have been imposed or the responsibility on the State of what they argue for? Could they have given him 50 years? There are definitely limitations. I would hesitate to pick a number out of thin air, and this Court has never done so. What this Court has explained is you have to show that the sentence was manifestly disproportionate to the nature of the offense or was at odds, at variance, with the purpose of the law. Here neither of those is true. In a hypothetical future case, yes, there is some number where a court could legitimately say, no, that's just not appropriate. For example, defendant relies a lot on the People v. Ziporn case from 1985 and his abusive discretion portion of his argument. But that case dealt with a situation where someone had said a bad word to the prosecutor after a harsh cross-examination. The expert witness was leaving the stand and said something bad, and a few witnesses in the courtroom heard it. This Court held that a five-year sentence of probation was manifestly disproportionate to the nature of that offense and that a fine was more appropriate. I think it's going to take a case-by-case analysis of these issues to answer Your Honor's question as to whether or not there is some limit. Of course, there's also constitutional limits on such sentences, but those have not been argued here before this Court. What import, if at all, does the fact that there's no Illinois published case with a longer sentence than six months and no federal case with a longer sentence than ten years, and that's where defendant attacked a witness with a screwdriver? There is not much to be made of those facts, Your Honor, because when we're talking about published opinions, the vast majority of the opinions that would deal with something like this would be unpublished opinions. So there's been no case study or research cited to demonstrate to this Court what the normal length of sentence might have been in these types of circumstances. And, of course, the federal courts act under a more limited statutory mandate where most of the time they're limited to imposing shorter sentences. So it takes something like violence against a witness to impose a longer sentence in the federal courts. But, again, at common law, the contempt power has been around for centuries. And, indeed, traditionally there was no appellate review at all. It's perhaps most important that this Court not change long-settled standards in order to reach a decision. Essentially what we're asking is that this Court not do something we revert to in law school as using bad facts to make bad law. But what are the standards you say? What are they? Does the Court know what the standards are? This Court should follow its longstanding principle of applying an abuse of discretion standard. And, as we discussed, that would require an analysis of whether or not it was manifestly disproportionate to the nature of the offense, and I've discussed already the severe nature of the offense, or that it was at variance with the purpose of the law. And the purpose of sentencing law, of course, is deterrence. And it's very important to deter gang witnesses from picking and choosing when they're going to testify in a double homicide case. The defendant in this case chose to testify against one of his fellow gang members, Joe Mason, but refused to testify against another. Who knows what his motivation was for doing that, but the trial court made a factual finding that it was done out of a disdain not for himself personally, as he made clear on page R-174 of the record, but against the court system itself. But what facts did the court rely on about the disdain? His facial gestures? Well, relying on the trial court's analysis of his demeanor in describing that contempt. Part of that the trial court tried to put into the record by describing the look on his face. But, again, the trial court did this in the midst of a dispassionate, objective, rather lengthy analysis of the defendant's conduct before him when he refused to testify. This is on pages R-172 through 176 of the record. There's nothing in that factual finding that indicates the trial judge was acting in an impassioned way in order to seek vengeance on someone who had wronged him personally. There's none of that in this case. In fact, the trial judge made that specific finding on page 174, that it was not disdain against him personally that he saw from this witness. It was disdain for the court system. And, indeed, gang members encouraged their communities to disdain the court system. They encouraged their communities to hate the police, to not cooperate with prosecutors, and to not cooperate and to disrespect the courts. However, he did testify against one of the gang members. That's correct, Your Honor. And, again, we don't know why.  I'm sorry, Your Honor? There was a prior case against him, and he wasn't even called. That's true, Your Honor. The people convicted Mr. Hollins in a prior proceeding, and the appellate court reversed. And in the retrial, the people decided to buttress their evidence with the defendant's testimony, and he refused to cooperate. I don't know what his personal motivation was, but the trial court found that he did so out of disdain for the court system. And it's important to deter that type of conduct. Earlier you mentioned in your argument, I thought you said a 10-year sentence wouldn't be excessive. Did you mean to say that? Because there's a 20-year sentence here. Yes, Your Honor. What I had said was what this court could do was separate out the recidivism aspect, which, again, the defendant has not really explained sufficiently how that impacted his sentence. The General Assembly generally doubles, allows for trial courts to double the sentence for someone who's committed multiple prior felonies like the defendant here. So, in other words, what would normally be a 10-year sentence, the trial court in this case could have said, okay, well, I need to double that as an enhanced sentence. In other words, we could say fairly that approximately half of his 20-year sentence is being imposed here because of his habitual offender status. Now, we don't have factual findings from the trial court saying that, but it's fair based on the way Illinois does enhance sentencing to infer that. And is it important for the court to analyze or to set, at least in their own mind, a sentencing range? Because you said, you know, 10 years and then enhance it because of his prior record. Well, some way you've got to come up with the 10 years. That's one of our concerns in this case, Your Honor. Again, is that this court not make bad law based on bad facts, the extreme sentence that was imposed in this case. It would be much more beneficial to allow for the fact that, yes, some contempt sentences are going to be even more severe in conduct than this one, and we don't want the court to limit or restrict trial courts' inherent contempt power in dealing with those cases. So if any kind of sentencing range were to be discussed, the people would hope that this court would only do so in terms of broad guidelines, limiting its opinion in this case to the facts before it, if this court disagrees with our argument that the sentence is not, in fact, excessive. Or could it be as simple as just finding an abuse of discretion and sending it back, remanding it for resentencing? That would be our preference, Your Honors. If you disagree with, of course, our merits analysis, if this court does decide to reverse, we would ask that this court explain to the trial court where it abused its discretion and remand for resentencing. And to go back to Justice Garmon's question regarding guidelines, this court could set up some type of sentencing commission to provide guidelines. It could ask or encourage the General Assembly to provide guidelines. But it would be an area of law similar to this court's statements on the rules of evidence. It would be advisory because the power to sentence someone to contempt, the power to use those contempt powers is a core judicial power. And I think it would violate separation of powers for the legislature or for some type of commission to set firm guidelines. I think they would have to be advisory as they are in federal courts. I wanted to correct a misstatement of the record here. There's a suggestion that the trial court misled defendant into believing that he could be facing a six-month sentence with day-for-day credit. There was a discussion that took place regarding a 180-day sentence and its propriety. But that took place at about page 9 and 10 of the record. Defendant had already been excused from the courtroom when that discussion took place. He was excused on page 6 of the record and then readmitted into the courtroom to provide further testimony at the end of page 10 of the record. So there was no misleading him here as to the fact that the people only wanted a 180-day sentence. Counsel, can you also help me with my very poor math here? I'm going to ask the question again about six years plus 20. And the defendant has been in custody for how long? I'm sorry, Your Honor. I didn't look that up before I came to court. I can answer that in a post-argument hearing. But I agree that he was in the midst of serving his six-year sentence at the time he did this offense in the end of 2008. And he was sentenced to a 20-year consecutive term. And is there day-for-day credit for a contempt sentence? Yes, Your Honor. He's receiving day-for-day credit. So if he maintains good behavior, theoretically, he would only serve 10 years of that 20-year sentence. You said that we could send this back for resentencing to the trial court. Does that mean to the trial judge? I'm sorry, did I mishear? Could you repeat the question, Your Honor? You said that we could send this back for resentencing. Right. Back to the trial court. Does that mean to the same trial judge? Yes, Your Honor. There has been no request that this trial judge be replaced upon a remand. It would be inappropriate to do so. There's nothing in the record indicating any kind of personal bias in this case. The record at pages 172 through 176 indicates, again, a dispassionate objective analysis of the type of contempt that was faced in this case, which, of course, is the nature of the offense. Would it be a problem if the trial judge is no longer a trial judge? Oh, I haven't checked that. I believe Judge Erickson is still serving, but I don't know. Perhaps he's not. But, of course, if he's not still serving, it could be remanded to the chief judge to redistribute the case. I wanted to also cover one more thing, Your Honor. At page R40 of the record, it shows that the trial court did allow time for defendant to confer with counsel, and, indeed, the sheriff's bailiff observed them meeting and discussing this. There is still a day left in the Hollins trial, the next Monday, where defense counsel could have either come in that afternoon after conferring with his client, or he could have come in on the Monday of the Hollins trial and said, excuse me, Your Honor, my client's changed his mind. It's very fair to infer from this record, from page 40, that counsel was told by his client, no, I'm not changing my mind. Now, it's true that the attorney didn't return to court and report to us what exactly happened when he conferred with his client. But the fact that he didn't come back and say, you know what, Your Honor, I've explained it to him, and the 20 years is just too much of a threat. He wants to go ahead and change his mind and testify. The fact that he didn't do that tells us that the trial court did make a correct factual finding that this was a disdain for the court system and was not something that he was misled into, believing that he would only receive something like a six-month sentence. On page R16 of the record, the trial court informed him he faced a term of years. On page R35 of the record, the people read into the court minutes the fact that they were seeking a 20-year sentence. And on page R40 of the record, he conferred with counsel and still did not change his mind and say, wait a minute, I will go ahead and testify. Now, after the Hollins trial was over, yes, it was too late. But, you know, criminal conduct is often too late after it happens. So that shouldn't be a factor to consider in this court's analysis of the sentence. Unless there are any further questions I'd ask this court, affirm the judgment of the trial court below. Thank you. Rebuttal, Mr. Hamel. Thank you, Your Honor. Mr. Hamel, I have just one question. Did counsel say that it was read into the record before, that the defendant would actually know that he was going to get 20 years, and then they conferred and he still refused? I don't believe that he was given another opportunity to testify after that point. It was read into the record he was allowed to confer with his attorney and the case was continued to see how he would defend himself against the contempt petition. The counsel is correct that technically he probably could have spoken up then and the Hollins trial wasn't over and he could have testified then. I'm sure the state would have allowed him to. However, you see from the record sites that the state just rattled off. He was actually on the stand refusing to testify on page 6. This is page 35 and then the case is continued on page 40. So this is the end of the hearing. And by the time that happened, the tenor of the hearing had changed from, are you going to testify to what are you going to do about these charges now that you've not testified. So and even then I still would maintain just reading a petition to him saying the state's seeking 20 years isn't necessarily going to tell him that he's going to get 20 years. I'm sure I could tell you as a defense attorney myself if I was advising him at that point and he asked me would I really get 20 years for this, I would tell him no, you're not going to get 20 years for this. So I just don't think it's reasonable to say anybody under any circumstances would actually be consciously making the decision to risk 20 years for not testifying and that's what happened in Carradine and that's why this is brought up in the first place. Because the defendant in Carradine made that conscious decision, I want to trade six months to avoid the repercussions of not testifying. Mr. Hamill, doesn't Mr. Tribble make a pretty good point as to why to give limited consideration to the ultimate, what happened ultimately in the underlying case because he said that the testimony could benefit the prosecution or the defense. So the fact that you say, well, look, he was convicted anyway, really is really of no import in light of the fact that maybe that testimony, although I doubt it in this particular case based on what the state went forward with, but maybe that testimony could help the defense as well. Right. Well, I would agree to the extent that it's not determinative and the risk of it affecting the case is always going to be there, whether or not it actually had that impact. But whether or not somebody's conduct actually has a negative impact on something is always a sentencing consideration. And counsel brought up a case last term that was referring to People v. Alexander where the defendant shot up his school hallway and luckily didn't hit anybody. And the sentence that this court reinstated in that case was 24 years. Now, if he had hit somebody, the minimum sentence he would have faced was 45 years if they died and 31 years if they didn't, if it was an attempt murder, because it was 20 for the murder and 25 for the firearm enhancement. So that defendant did get a lesser sentence because he didn't hit anybody. And so there's always that factor of what harm actually was caused. You also do consider the threat of harm, too, but for something to be, again, 20 years, you expect there to actually be harm caused as well. And it is still a relevant factor. Toward the end of his argument, counsel started to talk about various things that this court could do, like setting up sentencing commissions or asking the legislature to set limits. One of the other things this court can do is simply adopt the federal standard of review, and that really takes care of all of this. A lot of this, you know, the problems, a lot of the problems and questions that this court had all stem from this problem where under traditional abuse of discretion review, the first thing you do is you look where does this sentence fit on the statutory range. And you can't do that here because there is no statutory range. But the way you fix that, that's where the federal standard of review comes in, where you look at the statutory range for similar conduct, you look at similar offenses, or other similar contempt offenses, and you can basically construct a range that substitutes for the statutory range, and then the analysis works. And if you do that here, you end up with something far less than 20 years for anything. So, and finally, I would just, on the question of whether this court should remand or reduce the sentence, counsel is correct, this court, there's authority for this court doing either one. Traditionally, and I don't think there's, I'm not aware of any law being written as to why this is, but traditionally this court, when finding an abuse of discretion, typically reduces the sentence. And for people versus Stacy is one case where that occurred. Typically remands occur, this court issues remands when the finding is that the judge committed some sort of procedural error during the sentencing, like considering an improper factor or something like that. So I think that reducing the sentence is more in line with this court's previous decisions. Also, just given the amount of time that this offender has already served, I think it would be appropriate to basically reduce the sentence, particularly because I think this defendant has already served too much time. I don't think there is a sentence up to where he's already served that would be, that would not be excessive. So he should get time served and it should happen really as quickly as possible. So the defendant should, so I would ask this court to actually just reduce the sentence to roughly time served, whatever that would be at the time when this court issues its decision, and leave it there. Unless this court has any further questions, thank you. Thank you, Mr. Hamill. Case number 113181, People versus Geiger, will be taken under advisement as agenda number seven.